## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| **ZACHARY PATON,** | ) | CASE NO. |
| | ) | |
| *Individually and on behalf of all others* | ) | JUDGE |
| *similarly situated,* | ) | |
| | ) | **PLAINTIFF'S CLASS ACTION** |
| Plaintiff, | ) | **AND COLLECTIVE ACTION** |
| | ) | **COMPLAINT** |
| *v.* | ) | |
| | ) | ***(Jury Demand Endorse Hereon)*** |
| **SHANER OPERATING CORP.** | ) | |
| ***d/b/a Shaner Operating*** | ) | |
| c/o Statutory Agent | ) | |
| CT Corporation System | ) | |
| 4400 Easton Commons Way, Suite 125 | ) | |
| Columbus, Ohio 43219 | ) | |
| | ) | |
| *and* | ) | |
| | ) | |
| **BRIDGE PARK HOTEL, LLC** | ) | |
| ***d/b/a VASO*** | ) | |
| KBHR Statutory Agent Corp. | ) | |
| P.O. Box 361715 | ) | |
| Columbus, Ohio 43236 | ) | |
| | ) | |
| Defendants. | ) | |

Plaintiff Zachary Paton, on behalf of himself and all others similarly situated, for his

Class and Collective Action Complaint against Defendants Shaner Operating Corp., *doing*

*business as* "*Shaner Operating,*" and Bridge Park Hotel, LLC, *doing busines*s as *"VASO,"*

(hereinafter also collectively referred to as "Defendants"), states and alleges the following:

### INTRODUCTION

1.     The Fair Labor Standards Act of 1938, as amended (the "FLSA"), 29 U.S.C. §

201, *et seq.*, is a broadly remedial and humanitarian statute designed to correct "labor conditions

detrimental to the maintenance of the minimum standard of living necessary for health,

efficiency, and general well-being of workers[,]" 29 U.S.C. § 202(a), as well as "to protect all covered workers from substandard wages and oppressive working hours." *Barrentine v. Ark Best Freight Sys. Inc*., 450 U.S. 728, 739 (1981). The FLSA required Defendants to pay all non-exempt employees at least the applicable minimum wage for all hours worked. 29 U.S.C. § 206. Ohio Constitutional Law further required the payment of minimum wage and contained other compensation requirements and/or penalties. *See* Ohio Const. Article II, Section 34a.

2.      Plaintiff brings this case to challenge the practices and policies of Defendants that willfully violate the FLSA, 29 U.S.C. §§ 201-219, as well as the Constitution of the State of Ohio, Article II, Section 34a.

3.      Plaintiff brings this case as an FLSA collective action pursuant to 29 U.S.C. § 216(b), which provides that "[a]n action to recover the liability… may be maintained against any employer … by any one or more employees for and in behalf of himself or themselves and other employees similarly situated… [who] gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought" – on behalf of himself and other employees who opt-into this action under the FLSA ("Opt-In Plaintiffs"), **COUNT ONE** of this Complaint.

4.      Plaintiff also brings this case as a class action under Fed. R. Civ. P. 23 on behalf of himself and other members of a class of persons who assert claims under Article II, Section 34a of the Ohio Constitution (the "State Law Class"), **COUNT TWO** of this Complaint.

5.      Plaintiff, other Opt-In Plaintiffs, and members of the State Law Class now seek to exercise their rights to unlawfully unpaid minimum wages, additional statutory and constitutionally-mandated liquidated damages in this matter, other penalties and compensation available under federal and Ohio law, in addition to prejudgment and post-judgment interest,

2

costs and attorneys' fees incurred in prosecuting this action, the employer's share of relevant

taxes, and such further relief as the Court deems equitable and just.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over Plaintiff's FLSA claims pursuant to 28 U.S.C. §

1331 and 29 U.S.C. § 216(b).

7. This Court has supplemental jurisdiction over Plaintiff's claims under Ohio law

because those claims are so related to the FLSA claims as to form part of the same case or

controversy. 28 U.S.C. § 1367.

8. Venue is proper in this judicial district and division pursuant to 28 U.S.C. §

1391(b) because one or more Defendant resides in this district and division and/or because all or

a substantial part of the events or omissions giving rise to Plaintiff's claims occurred here.

## PARTIES

9. Plaintiff Paton is an individual, a citizen of the United States, and a resident of the

State of Ohio. Plaintiff Paton has completed an "Opt-In Consent Form" which is filed as Exhibit

A to this Complaint and is incorporated by reference herein.

10. Defendant Shaner Operating Corp. is a Delaware for-profit corporation.[1]

According to records maintained by the Ohio Secretary of State, Defendant Shaner Operating

Corp.'s Ohio Statutory Agent for service of process is CT Corporation System, 4400 Easton

Commons Way, Suite 125, Columbus OH 43219.[2]

11. Defendant Bridge Park Hotel, LLC is an Ohio for-profit limited liability company

with an operating location at 6540 Riverside Dr., Dublin, OH 43017. According to records

maintained by the Ohio Secretary of State, Defendant Bridge Park Hotel, LLC's Statutory Agent

---

[1] https://businesssearch.ohiosos.gov?=businessDetails/781236 (last accessed April 1, 2024).
[2] *Id.*

for service of process is KBHR Statutory Agent Corp., P.O. Box 361715, Columbus, Ohio

43236.[3] According to records maintained by the Ohio Secretary of State, Defendant Bridge Park

Hotel, LLC controls the registered trade name "VASO," the business nature of which is the

"[o]peration of [sic] restaurant."[4]

12.     The FLSA and Ohio law "contemplate[] there being several simultaneous

employers who may be responsible for compliance with the FLSA."[5] "The remedial purposes of

the FLSA require the courts to define 'employer' more broadly than the term would be

interpreted in traditional common law applications."[6]

13.     Defendants Shaner Operating Corp. and Bridge Park Hotel, LLC are, upon

information and belief, at all times relevant, each an "employer" under the FLSA and Ohio law

as person(s) who acted directly or indirectly in the interest of an employer in relation to

employees – including Plaintiff, other Opt-In Plaintiffs, and members of the State Law Class –

and (1) owned, had an ownership interest in, or operated VASO by or in conjunction with any of

the other Defendants; (2) hired individuals, including Plaintiff, other Opt-In Plaintiffs, and

members of the State Law Class as employees of any of the named Defendants; (3) had the

authority to hire and fire Plaintiff, other Opt-In Plaintiffs, and members of the State Law Class;

(4) supervised and controlled work schedules or the conditions of employment as to Plaintiff,

other Opt-In Plaintiffs, and members of the State Law Class; (5) determined the rate and method

of payment as to Plaintiff, other Opt-In Plaintiffs, and members of the State Law Class; (6)

maintained or were required to maintain employment records in connection with Plaintiff, other

---

[3] https://businesssearch.ohiosos.gov?=businessDetails/2430795 (last accessed April 1, 2024).
[4] https://bizimage.ohiosos.gov/api/image/pdf/201705204132 (EXTERNAL PDF DOWNLOAD; last accessed April 1, 2024).
[5] *Dole v. Elliott Travel & Tours, Inc*., 942 F2d 962, 965 (6th Cir. 1991) (citing *Falk v. Brennan*, 414 U.S. 190, 195, 94 S. Ct. 427, 38 L. Ed. 2d 406 (1973)).
[6] *Id.* (citing *McLaughlin v. Seafood, Inc.,* 867 F.2d 875, 877 (5th Cir. 1989) (per curiam)).

Opt-In Plaintiffs, and members of the State Law Class; and/or (7) are otherwise proper parties to this lawsuit as employers of Plaintiff, other Opt-In Plaintiffs, and members of the State Law Class under the FLSA and Ohio law.

14. Defendants are each an employer of Plaintiff, other Opt-In Plaintiffs, and members of the State Law Class pursuant to the FLSA and Ohio law. Defendants jointly manage and oversee the operations of VASO, and through these entities Defendants operate in concert in a common enterprise such that the actions of each may be imputed to the other, and/or they operate as joint employers within the meaning of the FLSA, and/or were otherwise legally responsible in some way for the matters alleged herein and proximately caused Plaintiff and similarly situated employees to be subject to the unlawful wage theft and pay practices described in this Complaint. Each Defendant is therefore responsible, both individually, *and jointly and severally*, for compliance with all of the applicable provisions of the FLSA and Ohio law.

## FACTUAL ALLEGATIONS

### Defendants' Business and Defendants' Statuses as Employers

15. Defendants own, operate, and/or are employers of employees at a restaurant and bar in Dublin, Ohio named "VASO."

16. Defendants are each "employers" of Plaintiff, other Opt-In Plaintiffs, and members of the State Law Class within the meaning of the FLSA, 29 U.S.C. § 203(d), and Ohio Const. Article II, Section 34a.

17. Defendants utilize non-exempt employees, including Plaintiff, other Opt-In Plaintiffs, and members of the State Law Class, in furtherance of their business purposes.

18. At all times relevant, Defendants were an enterprise within the meaning of 29 U.S.C. § 203(r).

5

19.     At all times relevant, Defendants were an enterprise engaged in commerce or in the production of goods for commerce within the meaning of 29 U.S.C. § 203(s)(1).

20.     Upon information and belief, Defendants operate and control an enterprise engaged in commerce, with annual gross volume of business exceeding $500,000.00.

### Plaintiff's, other Opt-In Plaintiff's, and State Law Class Members' Non-Exempt Employment Statuses with Defendants

21.     Plaintiff Paton has been employed by Defendants since approximately March 2023 to the present as a non-exempt tipped employee. During his employment, Plaintiff has had the job titles, and/or engaged in job duties consistent with the job titles of, server assistant, server, and bartender. Plaintiff is paid an hourly rate by Defendant that is less than the federal minimum wage rate and less than the Ohio minimum wage rate.

22.     Throughout their employments, Defendants classified and paid Plaintiff, as well as other Opt-In Plaintiffs, and members of the State Law Class, as non-exempt employees.

23.     At all times relevant, Plaintiff, other Opt-In Plaintiffs, and members of the State Law Class were employees within the meaning of 29 U.S.C. § 203(e) and Ohio Const. Article II, Section 34a.

24.     At all times relevant, Plaintiff, other Opt-In Plaintiffs, and members of the State Law Class were employees engaged in commerce or in the production of goods for commerce within the meaning of 29 U.S.C. § 206.

25.     Part of Plaintiff's, other Opt-In Plaintiff's, and State Law Class members' job duties included regularly handling multiple goods and products that have been produced or moved in interstate commerce, on a daily basis, throughout their workdays.

## The FLSA and Ohio Law's Minimum Wage
## and Tip/Tip Credit Requirements

26.     The FLSA incorporates state minimum wage laws when they include a higher

minimum wage than the FLSA. 29 U.S.C. § 206. The Ohio Constitution, for example, provides

the following requirements for Ohio's minimum wage tip credit: "[a]n employer may pay an

employee less than, but not less than half, the minimum wage rate required by this section if the

employer is able to demonstrate that the employee receives tips that combined with the wages

paid by the employer are equal to or greater than the minimum wage rate for all hours worked."

Ohio Const. Article II, Section 34a.

27.     Ohio's minimum wage, and therefore the FLSA minimum wage applicable to

Ohio workers, is adjusted annually as specified by Ohio Const. Article II, Section 34a, and for

tipped employees was $4.40 per hour plus tips totaling at least $8.80 per hour in 2021, $4.65 per

hour plus tips totaling at least $9.30 per hour in 2022, $5.05 per hour plus tips totaling at least

$10.10 per hour in 2023, and is $5.25 per hour plus tips totaling at least $10.45 per hour in 2024.

28.     The tip-credit provisions of the FLSA allow employers to pay less than the

statutory minimum wage provided that the employer complies with strict requirements.

29.     29 C.F.R. § 531.56(e), the "dual jobs" regulation, explains how workers who

engage in both tipped and non-tipped work are to be compensated as required by Sections 3(m)

and 3(t) of the FLSA. The "dual jobs" regulation states:

> In some situations, an employee is employed in dual jobs, as, for example, where a
> maintenance person in a hotel also works as a server. In such a situation if the
> employee customarily and regularly receives at least $30 a month in tips for the
> employee's work as a server, the employee is engaged in a tipped occupation only
> when employed as a server. The employee is employed in two occupations, and no
> tip credit can be taken for the employee's hours of employment in the occupation
> of maintenance person.

30.     29 C.F.R. § 531.56(f) applies to employees "[e]ngaged in a tipped occupation." § 531.56(f) was intended to address situations, as described in the Federal Register, where workers were "required to perform non-tipped work for substantial amounts of time, such as filling condiments and sweeping an assigned section of the restaurant for 30-45 minutes before and after the restaurant is open, rolling silverware for an hour after a long shift, or moving chairs to and from an outdoor patio for an hour before and an hour after service." The DOL provided a striking example where a server was required to spend time before a shift "setting up the dining room and bar, stocking the kitchen, sweeping, washing bar dishes, doing my own prep work, and then doing it all again at the end of the night," with the server noting that "I was not making . . . additional tips during this time."

31.     29 C.F.R. § 531.56(f)(5), addressing situations where an employer is not permitted to take a tip credit as a result of a tipped employee performing work that is not part of the tipped occupation, provides:

> (i) Work that is not part of the tipped occupation is any work that does not provide service to customers for which tipped employees receive tips, and does not directly support tip-producing work. If a tipped employee is required to perform work that is not part of the employee's tipped occupation, the employer may not take a tip credit for that time.

32.     29 C.F.R. § 531.56(f)(4), addressing situations where an employer is not permitted to take a tip credit as a result of a tipped employee performing supporting but not tip-producing work, provides:

> ***Substantial amount of time***. An employer can take a tip credit for the time a tipped employee spends performing work that is not tip-producing, but directly supports tip-producing work, provided that the employee does not perform that work for a substantial amount of time. For the purposes of this section, an employee has performed work for a substantial amount of time if:

(i) The directly supporting work exceeds a 20 percent workweek tolerance, which is calculated by determining 20 percent of the hours in the workweek for which the employer has taken a tip credit. The employer cannot take a tip credit for any time spent on directly supporting work that exceeds the 20 percent tolerance. Time for which an employer does not take a tip credit is excluded in calculating the 20 percent tolerance; or

(ii) For any continuous period of time, the directly supporting work exceeds 30 minutes. If a tipped employee performs directly supporting work for a continuous period of time that exceeds 30 minutes, the employer cannot take a tip credit for any time that exceeds 30 minutes….

### Defendants' Impermissible Tip Credit Policies and Practices

33.     Defendants compensated Plaintiff, other Opt-In Plaintiffs, and members of the State Law Class as tipped employees during Plaintiff's, other Opt-In Plaintiffs,' and members of the State Law Class's employments; Defendants paid Plaintiff, other Opt-In Plaintiffs, and members of the State Law Class less than the statutory minimum hourly wage, a sub-minimum wage, and took a "tip credit" against Defendants minimum wage obligations.

34.     As outlined above, however, Defendants were prohibited from taking a tip credit when (1) their tipped employees performed work that is not part of the employee's tipped occupation, (2) their tipped employees performed work that is directly supporting work but non-tipped work when the employees' time performing these tasks exceeded twenty percent of their tipped employees' time worked during a workweek, or (3) their tipped employees performed non-tipped but directly supporting work for a continuous period of time that exceeds 30 minutes during a workweek.

35.     Despite these requirements, Defendants violated the FLSA and Ohio law, and were thus not permitted to take a tip credit, because of all three reasons outlined in the above paragraph as further detailed below.

9

36. Defendants require Plaintiff, other Opt-In Plaintiffs, and members of the State Law Class to arrive at their place of employment – Defendants' VASO restaurant – typically one- and one-half (1 ½) hours prior to a restaurant opening time. During this time, there are no customers present, and during this time they have no ability to perform tip producing work. Defendants also require Plaintiff, other Opt-In Plaintiffs, and members of the State Law Class to remain at their place of employment – Defendants' VASO restaurant – for one hour or more after restaurant closing times, similarly when there are no customers present, and during this time they have no ability to perform tip producing work. Similar violations occurred during the middle of the shifts when there were periods of time without customers.

37. Only by way of example, Defendants' restaurant VASO opens at 4:00 p.m. Monday – Friday, as shown in the screenshot from https://www.vasodublin.com/location/vaso-dublin/ (last accessed March 26, 2024) below:



HOURS & LOCATION

6540 Riverside Drive,
Dublin, OH 43017
(614) 698-2525

**SUNDAY**
2:00 PM - 10:00 PM

**MONDAY - THURSDAY**
4:00 PM - 12:00 AM
(Kitchen - 10:00pm)

**FRIDAY**
4:00 PM - 1:00 AM
(Kitchen - 11:00pm)

**SATURDAY**
2:00 PM - 1:00 AM
(Kitchen - 11:00pm)

**HAPPY HOUR MONDAY - FRIDAY**
4:00 PM - 6:00 PM

614-698-2525

38.     Despite that Defendants' VASO restaurant has an opening time of, only by way of example, 4:00 p.m. Monday – Friday, Defendants required Plaintiff, other Opt-In Plaintiffs, and members of the State Law Class to arrive at their place of employment typically at 2:30 p.m., one- and one-half hours prior to the restaurant opening time.

39.     Defendants' tipped employees, including but not limited to Plaintiff Paton (only by way of example), were required to arrive early a substantial amount of time, typically one- and one-half hours early at 2:30 p.m. during the workweek, despite that Defendants restaurant VASO did not open until 4:00 p.m.

40.     The requirement of Plaintiff, other Opt-In Plaintiffs, and members of the State Law Class to work one- and one-half hours prior to Defendants' VASO restaurant opening times when there were no customers present, and after the restaurant closing times when there were similarly no customers present, was both mandatory and required to perform "work that is not part of the tipped occupation," as well as nontipped but "directly supporting work" for a "substantial amount of time," as those terms are used in the FLSA, 29 C.F.R. § 531.56.

41.     During the required restaurant pre-opening, and/or restaurant post-closing, times, Plaintiff, other Opt-In Plaintiffs, and members of the State Law Class did not perform customer facing duties. Instead, Defendants required Plaintiff, other Opt-In Plaintiffs, and members of the State Law Class to perform work that included, but was not limited to (as to servers and/or bartenders): attending a pre-opening 15 minute mandatory meeting where, among other things, reservations, upcoming events, menu options, and missing products were discussed and work instructions were provided; cutting and assorting fruit for the bar (for bartenders); brewing tea; cleaning and wiping down booths; cleaning and prepping appliances (e.g., the tea brewer, espresso machine, coffee grinder, etc.); cleaning bill holders / check presenters; cleaning booths

11

and chairs; cleaning the patio and outdoor areas; cleaning stainless steel shelves in the server area; cleaning tables; disassembling and cleaning dispensing bar guns and equipment, such as nozzles, drink dispensers, drink lines, holsters, and bar gun towers (for bartenders); filling water carafes in the fridge, and adding ice to the cooler for carafes; filling condiment shelves and caddies; folding linens and napkins; moving around and prepping heat lamps; moving tables as necessary, especially for frequently occurring large events; polishing and restocking silverware; preparing the restaurant for opening, including putting chairs down, filling ice bins, setting glassware and silverware; rolling silverware; setting up cabana / igloos on the patio; setting up on-cart bar stations; setting up the dining room, bar, and patio; stocking server areas with glassware, plates, and silverware; stocking tea and coffee filters; stocking to-go boxes and bags; sweeping the dining room and patio; sweeping, cleaning and mopping the bar area (for bartenders); wiping and cleaning point of sale screens and devices; wiping counters; and working on various assignments for cleaning, organizing, inventorying, and other administrative tasks. In addition, as server assistants, Plaintiff and others were required to perform other and/or additional non-customer facing duties during the required pre-opening and post-closing times, including but not limited to breaking down and cleaning tea urns and coffee pots; breaking down and cleaning the server line; breaking down and cleaning the expo line; cleaning bathrooms in the break room (including wiping mirrors, sweeping, wiping the sink and counter, restocking toilet paper and paper towels, cleaning the toilet); cleaning the back and kitchen area(s); cleaning the expo counter and shelves; filling sauces; filling, setting up, and cleaning ketchup and syrup bottles; filling, setting up, and cleaning salt and pepper shakers; mopping the kitchen; setting up the expediters line; taking out trash; and stocking servers areas.

12

42. Defendants' tipped employee minimum wage practices and policies violated the FLSA and Ohio law in several ways, as outlined below.

43. First, during the required restaurant pre-opening times, as outlined above, as well as during their shifts and after the restaurant closed at the end of their shifts, Plaintiff, other Opt-In Plaintiffs, and members of the State Law Class were required to perform tasks that the DOL has identified as "[w]ork that is not part of the tipped occupation." Pursuant to DOL regulations that have the force of law, "[w]ork that is not part of the tipped occupation is any work that does not provide service to customers for which tipped employees receive tips, and does not directly support tip-producing work." As provided by 29 C.F.R. § 531.56(f)(5), for such work that a "tipped employee is required to perform [] that is not part of the employee's tipped occupation, the employer may not take a tip credit for that time." These tasks include, but are not necessarily limited to, cleaning bathrooms, cleaning appliances, rolling silverware, taking out trash, performing tasks that were maintenance and janitorial work, and other similar tasks and other duties performed by Plaintiff, other Opt-In Plaintiffs, and members of the State Law Class.

44. Although the FLSA permits employers to take a tip credit against their minimum wage obligations for employees who customarily and regularly receive tips, Defendants were prohibited from taking a tip credit when tipped employees performed work that is not part of the tipped occupation. Though Defendants were prohibited from taking a tip credit against their minimum wage obligations for Plaintiff, other Opt-In Plaintiffs, and members of the State Law Class when these employees performed work that is not part of the tipped occupation, including but not limited to the tasks described in ¶¶ 41 and 43 above, Defendants, in violation of the FLSA, 29 U.S.C. §§ 203(m), 206, and Ohio law, unlawfully took a tip credit against their

minimum wage obligations to the detriment of Plaintiff, other Opt-In Plaintiffs, and members of the State Law Class.

45.    Second, Defendants' utilization of the tip credit provisions of the FLSA and Ohio law for Plaintiff, other Opt-In Plaintiffs, and members of the State Law Class when these employees performed non-tipped, but "directly supporting work," exceeding twenty percent of their weekly time worked violates the FLSA and regulations thereunder that have the force of law, including 29 C.F.R. § 531.56(f)(4)(i). Regularly, in one or more workweeks during their employments, Plaintiff, other Opt-In Plaintiffs, and members of the State Law Class were required to performed non-tipped, but "directly supporting work," exceeding twenty percent of their weekly time worked, for a "substantial amount of time." *Id.*

46.    Although the FLSA permits employers to take a tip credit against their minimum wage obligations for employees who customarily and regularly receive tips, Defendants were prohibited from taking a tip credit when tipped employees performed non-tipped, but "directly supporting work," exceeding twenty percent of their weekly time worked. Though Defendants were prohibited from taking a tip credit against their minimum wage obligations for Plaintiff, other Opt-In Plaintiffs, and members of the State Law Class when these employees performed non-tipped, but "directly supporting work," exceeding twenty percent of their weekly time worked, including but not limited to when performing the tasks described in ¶ 41 above, Defendants, in violation of the FLSA, 29 U.S.C. §§ 203(m), 206, and Ohio law, unlawfully took a tip credit against their minimum wage obligations to the detriment of Plaintiff, other Opt-In Plaintiffs, and members of the State Law Class.

47.    And third, Defendants' utilization of the tip credit provisions of the FLSA and Ohio law for Plaintiff, other Opt-In Plaintiffs, and members of the State Law Class when these

employees performed non-tipped, but "directly supporting work," for any continuous period of time exceeding 30 minutes violates the FLSA and regulations thereunder that have the force of law, including 29 C.F.R. § 531.56(f)(4)(ii). Regularly, during one or more workweeks during their employments, Plaintiff, other Opt-In Plaintiffs, and members of the State Law Class were required to performed non-tipped but "directly supporting work" for continuous periods of time exceeding 30 minutes, by way of example, when Defendants required them to arrive at Defendants' restaurant and start performing side work regularly one- and one-half (1 ½) hours prior to the restaurant's opening time, and regularly work for one (1) hour or more after Defendants' restaurant closed to customers, as well as during periods in the middle of the shifts when there were periods of time without customers.

48.     Although the FLSA permits employers to take a tip credit against their minimum wage obligations for employees who customarily and regularly receive tips, Defendants were prohibited from taking a tip credit when tipped employees performed non-tipped but "directly supporting work" for continuous periods of time exceeding 30 minutes. Though Defendants were prohibited from taking a tip credit against their minimum wage obligations for Plaintiff, other Opt-In Plaintiffs, and members of the State Law Class when these employees performed non-tipped but "directly supporting work" for continuous periods of time exceeding 30 minutes, including but not limited to when performing the tasks described in ¶ 41 above, Defendants, in violation of the FLSA, 29 U.S.C. §§ 203(m), 206, and Ohio law, unlawfully took a tip credit against their minimum wage obligations to the detriment of Plaintiff, other Opt-In Plaintiffs, and members of the State Law Class.

49.     As a result of Defendants' unlawful and willful tipped employee minimum wage practices and policies, Plaintiff, other Opt-In Plaintiffs, and members of the State Law Class are

entitled to the non-tipped employee full minimum wage plus tips for every hour of work that they performed for Defendants during the statutory period, or the difference between $8.80 per hour in 2021, $9.30 per hour in 2022, $10.10 per hour in 2023, and $10.45 per hour in 2024, and the wage paid by Defendants. Plaintiff, other Opt-In Plaintiffs, and members of the State Law Class are entitled to receive the difference between the Ohio minimum wage rate and the tip credit adjusted minimum wage rate paid for each hour they worked for Defendants.

50.     In addition, Plaintiff, other Opt-In Plaintiffs, and members of the State Law Class are entitled to automatic triple damages for Defendants' minimum wage violations pursuant to Ohio Const. Art. II, Sec. 34a.

51.     The manner in which Defendants set up their time payment practices and policies were done in such a way as to inherently require their tipped employees to perform side work, as well as perform work that is not part of the tipped occupation, in order to substantially reduce labor costs – work that should have been paid at full minimum wage or performed by non-tipped employees who earned at least the minimum wage when performing such work. Defendants' practices and policies were antithetical to the tip credit provisions of the FLSA, Ohio law, and regulations thereunder that have the force of law, the same practices and policies discussed in the Federal Register where tipped employees were required to spend substantial periods of time – while receiving a fraction of minimum wage – performing tasks that do not generate tips.

52.     Defendants' pay practices were the result of systematic and company-wide policies originating at the corporate level. Defendants' policies with respect to the nonpayment of minimum wages resulted from knowing or reckless executive decisions. Defendants, through their supervisors and managers, personally knew that Plaintiff, other Opt-In Plaintiffs, and members of the State Law Class were performing "work that is not part of the tipped

16

occupation," as well as side work, for significant continuous periods of time before, as well as during, and as well as for significant continuous periods of time after, their restaurant opening times for which these employees were not paid full minimum wages, as a result of Defendants' tipped employee scheduling and restaurant opening/closing times policies, and thus Defendants' actions were deliberate and willful within the meaning of the FLSA and Defendants lacked a good faith basis for their actions. Defendants knew about the minimum wage requirements of the FLSA and Ohio law or acted in reckless disregard as to Defendants' obligations under the FLSA and Ohio law.

### The Willfulness of Defendants' Violations

53.     In addition to the above allegations demonstrating the willfulness of Defendants' wage violations as provided for above, Defendants knew that Plaintiff, other Opt-In Plaintiffs, and members of the State Law Class were entitled to minimum wages under federal and state law or acted in reckless disregard for whether they were so entitled.

54.     By denying Plaintiff, other Opt-In Plaintiffs, and members of the State Law Class minimum wages as required by the FLSA and Ohio law, Defendants' acts were not based upon good faith. Through legal counsel as well as industry experience and custom, Defendants possessed ample access to the regulations and statutory provisions requiring the proper and prompt payment of minimum wages under federal and Ohio law, as recited in this Complaint, but either failed to seek out such information and guidance or did seek out the information and guidance but failed to adhere to the principles of compliance as required. Defendants therefore knew about the minimum wage requirements of the FLSA and Ohio law, or acted in reckless disregard as to Defendants' obligations under these laws.

55.     Moreover, Defendants' minimum wage obligations under the FLSA and Ohio law were clearly known by Defendants, but nonetheless willfully and intentionally disregarded. For example, O.R.C. § 4111.09 provides that "[e]very employer subject to sections 4111.01 to 4111.17 of the Revised Code, or to any rules issued thereunder, shall keep a summary of the sections, approved by the director of commerce, and copies of any applicable rules issued thereunder, or a summary of the rules, posted in a conspicuous and accessible place in or about the premises wherein any person subject thereto is employed." As approved by the Director of Commerce, this conspicuously-placed posting (applicable to 2024, by way of example) includes the language: "***TIPPED EMPLOYEES*… A Minimum Wage of \$5.25** per hour **PLUS TIPS**… **'Tipped Employees'** includes any employee who engages in an occupation in which he/she customarily and regularly receives more than thirty dollars (\$30.00) per month in tips. **Employers electing to use the tip credit provision must be able to show that tipped employees receive at least the minimum wage when direct or cash wages and the tip credit amount are combined**."[7] Similarly, the FLSA, 29 C.F.R. § 516.4, also required Defendants to inform their employees, including Plaintiff, other Opt-In Plaintiffs, and members of the State Law Class, of the tip credit and minimum wage provisions of the FLSA. *Id.* ("Every employer employing any employees subject to the Act's minimum wage provisions shall post and keep posted a notice explaining the Act … in conspicuous places in every establishment where such employees are employed so as to permit them to observe readily a copy.")

56.     Defendants therefore knew about the minimum wage requirements of the FLSA and Ohio law, or acted in reckless disregard for whether Plaintiff, other Opt-In Plaintiffs, and members of the State Law Class were entitled to minimum wages.

---

[7] *See, e.g.,* https://com.ohio.gov/static/documents/2024_MW_Poster.pdf (EXTERNAL PDF DOWNLOAD; last sentence emphasis added; last accessed April 1, 2024).

57.     Defendants intentionally, knowingly, and willfully circumvented the requirements of the FLSA and Ohio law.

58.     Plaintiff and other Opt-In Plaintiffs are therefore entitled to liquidated damages equal to the amount of all unpaid minimum wages, pursuant to 29 U.S.C. § 260.

59.     Plaintiff and other Opt-In Plaintiffs who join this case pursuant to 29 U.S.C. § 216(b), and the members of the State Law Class, are also entitled to damages in the amount of their unpaid minimum wages, as well as additional damages as required by Art. II, Sec. 34a of the Ohio Constitution in an additional amount equal to two times the amount of unpaid minimum wages, regardless of whether Defendants' failure to pay minimum wages were willful and/or are entitled to a defense based on good faith.

60.     The above payroll practices resulted in knowing and willful minimum wage and tip violations of the FLSA, 29 U.S.C. §§ 201-219; Ohio Const. Art. II, § 34a; and resulted in the unlawful deprivation of minimum wages to the benefit of Defendants and to the detriment of Defendants' employees, including Plaintiff, other Opt-In Plaintiffs, and members of the State Law Class.

## FLSA COLLECTIVE
## MINIMUM WAGE ALLEGATIONS
### (As to COUNT ONE)

61.     Plaintiff incorporates by reference the foregoing allegations as if fully rewritten herein.

62.     Plaintiff brings this case under the FLSA, 29 U.S.C. § 216(b), which provides that "[a]n action to recover the liability" prescribed by the FLSA "may be maintained against any employer … by any one or more employees for and in behalf of himself or themselves and other employees similarly situated."

63.     Plaintiff brings this case on behalf of himself and a group of employees of Defendants (referred to herein as the "Opt-In Plaintiffs") who assert claims under the minimum wage provisions of the FLSA, 29 U.S.C. § 201, *et seq.* The potential "Opt-In Plaintiffs" who are "similarly situated" to Plaintiff with respect to Defendants' FLSA minimum wage violations include:

> **All current and former tipped employees (including but not limited to servers, bartenders, server assistants, and other employees with similar job titles and/or positions) of Defendants during the period of three years preceding the commencement of this action for whom Defendants took a tip credit. [8]**

64.     Such persons are "similarly situated" with respect to Defendants' FLSA minimum wage violations, as to the collective group of employees identified above, in that all were non-exempt tipped employees of Defendants for whom Defendants took a tip credit, all were subjected to and injured by Defendants' unlawful practice of failing to pay minimum wage for all hours worked, and all have the same claims against Defendants for unpaid minimum wages as well as for liquidated damages, attorneys' fees, and costs.

65.     Plaintiff and potential Opt-In Plaintiffs, having willfully been not paid at least the federal and Ohio minimum wage for all hours they worked for Defendants pursuant to the common policies described herein, are "similarly situated" as that term is used in 29 U.S.C. § 216(b) and the associated decisional law. *See* 29 U.S.C. § 206.

66.     Plaintiff and potential Opt-In Plaintiffs have been similarly affected by the FLSA minimum wage violations of Defendants in one or more workweeks during the relevant time period, which amount to a single decision, policy, or plan to willfully avoid paying all earned federal and Ohio minimum wages.

---

[8] Plaintiff respectfully reserves the right to amend and refine the definition of the Opt-In Plaintiffs group members he seeks to have the Court serve notice based upon further investigation and discovery.

67. Plaintiff and potential Opt-In Plaintiffs have been damaged by Defendants' willful refusal to pay at least the federal and Ohio minimum wage for all hours worked. As a result of Defendants' willful FLSA violations, each Plaintiff and potential Opt-In Plaintiffs are similarly situated in that each is entitled to damages, including, but not limited to, unpaid wages, liquidated damages, costs, interest, and attorneys' fees.

68. Throughout his employment with Defendants, Plaintiff was subjected to the same tip credit and payroll practices and policies by Defendants that other potential Opt-In Plaintiffs were subjected to.

69. Plaintiff is similarly situated to potential Opt-In Plaintiffs and will prosecute this action vigorously on their behalf.

70. Plaintiff is entitled to send notice to all potential Opt-In Plaintiffs pursuant to Section 216(b) of the FLSA. Identification of potential Opt-In Plaintiffs is readily available from the timekeeping and compensation records, including scheduling, timekeeping and payroll data, maintained by Defendants. For the purpose of notice and other purposes related to this action, their names, addresses, email addresses, and phone numbers are readily available from Defendants. Notice can be provided by means permissible under the FLSA and decisional law.

71. Immediate, prompt notice of this matter to similarly situated persons pursuant to 29 U.S.C. § 216(b) – by Court order – is proper and necessary so that such persons may be sent a Court-authorized notice informing them of the pendency of this action and giving them the opportunity to "opt in."

72. Court Supervised Notice pursuant to 29 U.S.C. § 216(b) to potential Opt-In Plaintiffs is appropriate because they have been subjected to the common business practices referenced in the paragraphs above, and the success of their claims depends upon the resolution

of common issues of law and fact, including, inter alia, whether Defendants satisfied the FLSA's and Ohio law's requirements for payment of all statutory minimum wages.

73.     The precise size and identity of the group of potential Opt-In Plaintiffs are readily ascertainable from the payroll records, timekeeping records, and/or employee and personnel records of Defendants that Defendants were required to maintain, pursuant to the FLSA and Ohio law. Plaintiff cannot yet state the exact number of similarly-situated persons but avers, upon information and belief, that the group of potential Opt-In Plaintiffs consist of approximately forty (40) or more persons.

## OHIO CLASS ACTION
## MINIMUM WAGE ALLEGATIONS
### (As to COUNT TWO)

74.     Plaintiff incorporates by reference the foregoing allegations as if fully rewritten herein.

75.     Plaintiff also brings this case as a class action pursuant to Fed. R. Civ. P. 23 on behalf of a group of employees of Defendants who assert claims under Art. II, § 34a of the Ohio Constitution (referred to herein as the "State Law Class"), defined as:

> **All current and former tipped employees (including but not limited to servers, bartenders, server assistants, and other employees with similar job titles and/or positions) of Defendants during the period of three years preceding the commencement of this action for whom Defendants took a tip credit.**

76.     There are questions of law or fact common to the State Law Class, including but not limited to:

> Whether Defendants' conduct as described above violates Ohio Constitutional law governing payment of minimum wages;

> Whether Defendants denied Plaintiff and other members of the State Law Class earned and owed compensation where, among other things, these employees were not paid minimum wages for all hours worked;

Whether Defendants denied Plaintiff and other members of the State Law Class minimum wages by, among other things, taking a tip credit when Defendants were not permitted to do so; and

What amount of monetary relief will compensate Plaintiff and other members of the State Law Class for Defendants' failure to pay minimum wages owed when the minimum wages were required to be paid.

77. Plaintiff's claims are typical of the claims of other members of the State Law Class. Plaintiff's claims arise out of the same uniform course of conduct by Defendants, and are based on the same legal theories, as the claims of other State Law Class members.

78. The State Law Class, outlined above, is so numerous that joinder of all class members is impracticable. Plaintiff cannot yet state the exact number of class members but avers, upon information and belief, that the State Law Class consists of approximately forty (40) or more persons. The number of class members, as well as their identities, are ascertainable from the payroll and personnel records Defendants have maintained, and were required to maintain, pursuant to the FLSA and Ohio law. 29 U.S.C. § 211(c); 29 C.F.R. §§ 516.2, 516.5, 516.6, 516.7; Ohio Const. Art. II, § 34a.

79. Plaintiff will fairly and adequately protect the interests of the State Law Class. Plaintiff's interests are not antagonistic to, but rather are in unison with, the interests of other class members. Plaintiff's counsel have broad experience in handling class action litigation, including wage and hour litigation, and are fully qualified to prosecute the claims of the State Law Class in this case.

80. The questions of law or fact that are common to the State Law Class predominate over any questions affecting only individual members. The primary questions that will determine Defendants' liabilities to the State Law Class, listed above, are common to the State Law Class as a whole, and predominate over any questions affecting only individual class members.

81. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Requiring class members to pursue their claims individually would entail a host of separate suits, with concomitant duplication of costs, attorneys' fees, and demands on court resources. Many class members' claims are sufficiently small that they would be reluctant to incur the substantial cost, expense, and risk of pursuing their claims individually. Certification of this case as a class action pursuant to Fed. R. Civ. P. 23 will enable the issues to be adjudicated for all class members with the efficiencies of class litigation.

## COUNT ONE
**(FLSA Minimum Wage Violations)**
***On Behalf of Plaintiff and other Opt-In Plaintiffs who***
***Join this Action Pursuant to 29 U.S.C. § 216(b)***

82. Plaintiff incorporates by reference the foregoing allegations as if fully rewritten herein.

83. Plaintiff brings this claim for violation of the FLSA's minimum wage provisions on behalf of himself and other Opt-In Plaintiffs who join this case pursuant to 29 U.S.C. § 216(b).

84. The FLSA requires that "non-exempt" employees receive a minimum hourly wage for all work their employers suffer, permit or require them to perform. *See* 29 U.S.C. § 206.

85. Defendants failed to comply with the requirements of 29 U.S.C. § 206 by paying Plaintiff and other Opt-In Plaintiffs less than the applicable minimum wage for hours worked during one or more workweeks.

86. Defendant has engaged in a series of unlawful acts, practices, policies, and procedures in violation of the FLSA, including by refusing and/or failing to calculate and pay

Plaintiff's and other Opt-In Plaintiff's minimum wages as required by federal law. 29 U.S.C. §§ 203, 206.

87.     Defendants' unlawful conduct directly and proximately caused Plaintiff and other Opt-In Plaintiffs to suffer damages for which they are entitled to judgment.

88.     Defendants' violations have been willful and/or in reckless disregard of Plaintiff and other Opt-In Plaintiff's rights, and entitle Plaintiff and other Opt-In Plaintiffs to liquidated damages. 29 U.S.C. § 216(b) further provides that "[t]he court … shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action."

## COUNT TWO
### (Ohio Constitution Minimum Wage Violations)
### *On Behalf of Plaintiff, other Opt-In Plaintiffs,*
### *and State Law Class Members*

89.     Plaintiff incorporates by reference the foregoing allegations as if fully rewritten herein.

90.     Plaintiff brings this claim for violation of the Ohio's Constitutional minimum wage provisions contained within Art. II, Sec. 34a of the Ohio Constitution on behalf of himself and other Opt-In Plaintiffs and State Law Class members.

91.     The Ohio Constitution requires that employees receive a minimum hourly wage for all work their employers suffer, permit or require them to perform.

92.     Based on the improper practices and policies described herein, Defendants failed to comply with the requirements of the Ohio Constitution by paying employees less than the applicable minimum wage rate.

93.     Defendants have engaged in a series of unlawful acts, practices, policies, and procedures in violation of Art. II, Sec. 34a of the Ohio Constitution, including by refusing and/or

failing to calculate and pay Plaintiff's, other Opt-In Plaintiff's, and State Law Class members' minimum wages as required by the Ohio Constitution.

94.    Defendants' unlawful conduct directly and proximately caused Plaintiff, other Opt-In Plaintiffs, and members of the State Law Class to suffer damages for which they are entitled to judgment.

95.    Plaintiff, other Opt-In Plaintiffs, and members of the State Law Class are entitled to "equitable and monetary relief," including "two times the amount of the back wages," or triple damages, for Defendants' minimum wage violations pursuant to Ohio Const. Art. II, Sec. 34a.

[Plaintiff's *Prayer for Relief* follows on the next page.]

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself, other Opt-In Plaintiffs, and members of

the State Law Class, respectfully prays that this Honorable Court:

A.    Promptly order Defendants to provide all scheduling, payroll, timekeeping, and other relevant records necessary to determine similarly situated individuals;

B.    Prompt issuance of Court-approved notice to similarly-situated persons informing them of this action and enabling them to opt in;

C.    Tolling of the statute of limitations, *freely*, as to all would-be Opt-In Plaintiffs to the date this matter was initially filed,[9]

D.    Certify this case as a class action pursuant to Fed. R. Civ. P. 23 on behalf of Plaintiff and other members of the State Law Class, who seek recovery under Ohio Const. Art. II, § 34a;

E.    Enter judgment against Defendants, *jointly and severally*, and in favor of Plaintiff, the Opt-Ins who join this case pursuant to 29 U.S.C. § 216(b), and the members of the State Law Class;

F.    Award compensatory damages to Plaintiff, the Opt-Ins who join this case pursuant to 29 U.S.C. § 216(b) and Ohio law in the amount of their unpaid minimum wages, as well as liquidated damages in an equal amount, in addition to penalty damages as applicable;

G.    Award compensatory damages to Plaintiff, the Opt-Ins who join this case pursuant to 29 U.S.C. § 216(b), and the members of the State Law Class in the amount of their unpaid minimum wages, as well as additional automatic damages as required by Art. II, Sec. 34a of the Ohio Constitution in an amount equal to two times the amount of unpaid minimum wages;

H.    Designation of Plaintiff Paton as representative of the Fed. R. Civ. P. 23 State Law Class, and counsel of record as Class Counsel for the State Law Class;

I.    Award Plaintiff, other Opt-In Plaintiffs, and members of the State Law Class prejudgment interest, post-judgment interest, costs, and attorneys' fees incurred in prosecuting this action, expert fees, as well as statutory damages and an award of damages representing Defendants' employers' share of FICA, FUTA, state unemployment insurance, and any other required employment taxes; and

---

[9] *Clark v. A&L Homecare & Training Ctr., LLC,* 68 F.4th 1003, 1017 (6th Cir.2023) (holding, by majority concurrence, that "given the court's new standard, district courts should freely grant equitable tolling to would-be opt-in plaintiffs.")

J.      Enter such other and further relief as this Court deems equitable, just, and proper.

Respectfully Submitted,

*s/ Ryan A. Winters*
Joseph F. Scott (0029780) (Trial Counsel)
Ryan A. Winters (0086917)
**SCOTT & WINTERS LAW FIRM, LLC**
P: (216) 912-2221     F: (440) 846-1625
50 Public Square, Suite 1900
Cleveland, Ohio 44113
jscott@ohiowagelawyers.com
rwinters@ohiowagelawyers.com

Kevin M. McDermott II (0090455)
**SCOTT & WINTERS LAW FIRM, LLC**
P: (216) 912-2221     F: (440) 846-1625
11925 Pearl Rd., Suite 310
Strongsville, Ohio 44136
kmcdermott@ohiowagelawyers.com

*Attorneys for Plaintiff, Opt-In Plaintiffs, and Putative Class Counsel*

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.

*s/ Ryan A. Winters*
Ryan A. Winters (0086917)