**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **ZACHARY PATON,** ***on behalf of himself and all similarly situated individuals,*** | : | **Case No. 2:24-cv-1498** |
| **Plaintiff,** | : | |
| **v.** | : | **Judge Algenon L. Marbley**<br>**Magistrate Judge S. Courter Shimeall** |
| **SHANER OPERATING CORP.,** | : | |
| **Defendant.** | : | |

**<u>OPINION & ORDER</u>**

This matter is before the Court on Plaintiff's Motion to Facilitate Court Authorized Notice to Other Similarly Situated Potential Plaintiffs. For the reasons set forth below, this Court **GRANTS in PART and DENIES in PART** the Plaintiff's Motion.

## I. BACKGROUND

On April 1, 2024, Zachary Paton, the Named Plaintiff in this case, filed suit against Defendant Shaner Operating Corp. ("Shaner") on behalf of himself and others similarly situated, claiming violations of the Fair Labor Standards Act ("FLSA") and Ohio's wage and hour laws. (ECF No. 1). On March 4, 2025, Plaintiff filed an Amended Complaint. (ECF No. 41). Defendant is the owner and operator of a restaurant and bar named "VASO" located in Dublin, Ohio. (*Id.* ¶ 12). From March 2023 to March 2024, Paton was employed by Shaner as a VASO server and server assistant. He also worked some shifts as a bartender. (*Id.* ¶ 18). Paton was classified as a non-exempt tipped employee and was paid an hourly rate that was less than both the federal and Ohio minimum wage rates. (*Id.*). On a regular basis, however, Paton and other tipped VASO employees were expected to show up prior to the restaurant opening time and to stay after

customers left to perform work that was not part of their tipped occupation, as well as non-tipped side work. (*Id.* ¶¶ 34–36);(*See also* ECF Nos. 49-1, Exhibit A; 49-2, Exhibit B).

Specifically, Paton contends that he was frequently required to "perform heavy set-up duties, including flipping chairs, moving tables, setting up bar stations, getting infused water ready (including cutting lemons and other fruits), setting up cabana / igloos on the outdoor patio, [and] moving tables." (ECF No. 49-1 at 2). After shifts, servers were expected to spend time "cleaning the restaurant for the next shift, flipping chairs, putting down blinds, spot sweeping, rolling silverware, polishing glasses, cleaning out the igloos, and other closing duties." (*Id.*). Additionally, Paton stated that he and other employees were allegedly required to perform non-tipped side work that exceeded more than 20% of their weekly hours. (ECF No. 49 ¶ 36). Specifically, Paton attests that servers and bartenders were regularly expected to perform the following non-tip producing, duties, including, but not limited to:

a. attending a pre-opening meeting of approximately 15 minutes where, among other things, reservations, upcoming events, menu options, and missing products were discussed and work instructions were provided;
b. cutting and assorting fruit for the bar;
c. brewing tea;
d. cleaning and wiping down booths;
e. cleaning and prepping appliances (e.g., the tea brewer, espresso machine, etc.);
f. cleaning bill holders / check presenters;
g. cleaning booths and chairs;
h. cleaning the patio and outdoor areas;
i. cleaning stainless steel shelves in the server area;
j. cleaning tables;
k. disassembling and cleaning dispensing bar guns and equipment, such as nozzles, drink dispensers, drink lines, holsters, and bar gun towers (for bartenders);
l. filling water carafes in the fridge, and adding ice to the cooler for carafes;
m. filling condiment shelves and caddies;
n. folding linens and napkins;
o. moving around and prepping heat lamps for the outdoor patio;
p. setting up cabana / igloos on the outdoor patio;
q. moving tables as necessary, especially for frequently occurring large events;
r. polishing and restocking silverware;

s. preparing the restaurant for opening, including putting chairs down, filling ice bins, setting glassware and silverware;
t. rolling silverware;
u. setting up on-cart bar stations;
v. setting up the dining room, bar, and outdoor patio;
w. stocking server areas with glassware, plates, and silverware;
x. stocking tea and espresso;
y. sweeping the dining room and patio;
z. sweeping, cleaning and mopping the bar area;
aa. wiping and cleaning point of sale screens and devices;
bb. wiping counters; and
cc. working on various assignments for cleaning, organizing, inventorying, and other administrative tasks

(ECF No. 49-1 at 2–4). On the other hand, Servers Assistants were regularly expected to perform the following non-tip producing, duties:

a. breaking down and cleaning tea urns, espresso machines, and related equipment;
b. breaking down and cleaning the server line;
c. breaking down and cleaning the expo line;
d. cleaning bathrooms in the break room (including wiping mirrors, sweeping, wiping the sink and counter, restocking toilet paper and paper towels, cleaning the toilet);
e. setting up / assembling charcuterie boards;
f. cleaning the back and kitchen area(s);
g. cleaning the expo counter and shelves;
h. filling, setting up, and cleaning sauce bottles;
i. filling, setting up, and cleaning salt and pepper shakers;
j. mopping the kitchen;
k. setting up the expediters line;
l. taking out trash; and
m. stocking servers areas.

(*Id.* at 4). Paton estimates that in a given work week the time he spent performing non-tipped work exceeded 20% of his total hours, and more likely constituted 25% of his time. (*Id.*). Paton further stated that it was his understanding that the pay and work policies he experienced were standard for all VASO servers, bartenders, and server assistants based on his observations of other employees performing the same duties and being subject to the same scheduling requirements. (*Id.* at 5). He additionally affirms that he discussed these duties and policies with his VASO co-workers and VASO management. (*Id.*).

On September 4, 2025, Paton filed the motion *sub judice* requesting that this Court grant court-facilitated notice to similarly situated plaintiffs pursuant to 29 U.S.C. § 216(b). (ECF No. 49). Paton seeks to bring these claims on behalf of himself and other employees who are defined as: All current and former tipped employees (including but not limited to servers, bartenders, server assistants, and other employees with similar job titles and/or positions) of Defendant during the period of three years preceding the commencement of this action (April 1, 2021) to the present for whom Defendant took a tip credit. (ECF No. 41¶ 61).

## II. STANDARD OF REVIEW

The FLSA provides that a court may approve court-facilitated notice in an action brought "by any one or more employees for and on behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). Similarly situated employees "are permitted to opt into" the collective action. *Comer v. Wal-Mart Stores, Inc.*, 454 F.3d 544, 546 (6th Cir. 2006). The plaintiff bears the burden to show that the proposed class members are similarly situated to the lead plaintiff. *O'Brien v. Ed Donnelly Enters., Inc.*, 575 F.3d 567, 584 (6th Cir. 2009), *abrogated on other grounds by Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 669 (2016). Notably, however, the FLSA does not define "similarly situated." *Id.*

District courts thus conduct a two-phase inquiry to determine whether plaintiffs are similarly situated. *Clark v. A&L Homecare & Training Ctr., LLC*, 68 F.4th 1003, 1009 (6th Cir. 2023). In *Clark*, the Sixth Circuit clarified that at step one, for there to be court-facilitated notice to potential plaintiffs, the named plaintiff must show a "strong likelihood" that other employees of the defendant(s) are "similarly situated" to them. *McCall v. Soft-Lite L.L.C.*, 2023 WL 4904023, at *5 (N.D. Ohio Aug. 1, 2023) (citing *Clark*, 68 F.4th at 1011). *Clark's* "strong likelihood" standard is borrowed from the test applied when implementing preliminary injunctions and

"requires a showing greater than the one necessary to create a genuine issue of fact, but less than the one necessary to show a preponderance." *Id*. If the court permits court-facilitated notice at the first phase, the plaintiff is "permitted to solicit opt-in notices, under court supervision, from current and former employees." *Cornell v. World Wide Bus. Servs. Corp.*, 2015 WL 6662919, at *1 (S.D. Ohio Nov. 2, 2015).

The Sixth Circuit explained that whether particular employees are "similarly situated" is a fact-specific inquiry. *Clark*, 68 F.4th at 1010. Recognizing that the factual record is not yet fully developed at the point in the litigation wherein the court must determine whether to facilitate notice in a FLSA suit, the Sixth Circuit confirmed that the movant merely must "demonstrate to a certain degree of probability" that she will prove that the employees are "similarly situated" when the court issues its final decision. *Id*. at 1011. Accordingly, for court-facilitated notice to be approved, the plaintiff's burden is merely to "show only that his position is similar, not identical to the positions held by the putative class members." *Lewis v. Huntington Nat'l Bank*, 789 F. Supp. 2d 863, 867 (S.D. Ohio 2011); *Comer,* 454 F.3d at 546–47 (internal quotation marks and citation omitted). Showing a "unified policy" of violations is not required. *O'Brien*, 575 F.3d at 584. Rather, plaintiffs are similarly situated "when they suffer from a single, FLSA-violating policy, and when proof of that policy or of conduct in conformity with that policy proves a violation as to all the plaintiffs." *Id.* at 585.

Some considerations that may guide the court in its "similarly situated" inquiry include "whether [the other employees] performed the same tasks and were subject to the same policies

. . . as the original plaintiffs were." *Clark*, 68 F.4th at 1010. Whether other employees "are subject to individualized defenses" may also affect whether they are similarly situated. *Id*.

This Court finds it important to note that no single factor is determinative, given the following:

> The very point of the "similarly situated" inquiry is to determine whether the merits of other-employee claims would be similar to the merits of the original plaintiffs' claims—so that collective litigation would yield "efficient resolution in one proceeding of common issues of law and fact arising from the same alleged discriminatory activity."

*Id*. at 1012 (quoting *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989)).

Phase two occurs after the close of discovery and requires that the court makes a conclusive determination as to whether the named plaintiffs are "in fact similarly situated" to opt-in plaintiffs, which must be demonstrated by a preponderance of the evidence. *Clark*, 68 F.4th at 1009–10. At that point, the opt-ins become parties to the suit and can proceed to trial collectively. *Id.* at 1010. For the purposes of the motion *sub judice*, this Court considers phase one of the *Clark* analysis below.

## III. LAW & ANALYSIS

### A. Court-Facilitated Notice

Paton contends that this Court should grant court-facilitated notice on the grounds that he has demonstrated he is similarly situated to other non-tipped employees by demonstrating that: (1) Shaner required its tipped employees to perform work that is entirely unrelated to their tipped occupation; and (2) Shaner maintained a policy that violated the 80/20 rule. (ECF No. 49 at 14–18). In opposition, Shaner contends that Paton has failed to establish he is similarly situated to other non-tipped employees because: (1) he was never hired as a barback, bartender, or host; (2) the job duties of the tipped employees at VASO are vastly different; (3) Paton had different shifts

and hourly rates than the other employees; (4) representative evidence will not serve the class; (5) individualized defenses will apply; and (6) there is no evidence that Paton or other employees performed work unrelated to their job duties for their entire shift. (ECF No. 50 at 3–17). This Court addresses each argument in turn below.

The evidence presented by plaintiff to show he is similarly situated to others "may include affidavits of potential plaintiffs or evidence of a widespread policy or plan." *Petty v. Russell Cellular, Inc.*, 2014 WL 1308692, at *2 (S.D. Ohio Mar. 28, 2014). Affidavits from plaintiffs are properly considered in this inquiry where they "allege facts sufficient to support an inference that [they have] actual knowledge about other employees' job duties, pay structures, hours worked, and whether they were paid for overtime hours." *Foley v. Wildcat Invs., LLC*, 2023 WL 4485571, at *3 (S.D. Ohio July 12, 2023) (citing *O'Neal v. Emery Fed. Credit Union*, 2013 WL 4013167, at *8 (S.D. Ohio Aug. 6, 2013)). Facts "such as first-hand observations or observations with co-workers—will typically be enough to show that a similarly situated class of employees exists." *O'Neal*, 2013 WL 4013167, at *8.

As stated above, "[a] named plaintiff is similarly situated to other employees 'when they suffer from a single, FLSA-violating policy, and when proof of that policy or of conduct in conformity with that policy proves a violation as to all the plaintiffs.'" *Bunger v. Surge Staffing, LLC*, 2024 WL 2858699, at *3 (S.D. Ohio June 6, 2024) (citing *O'Brien*, 575 F.3d at 585). First, Paton argues that he has satisfied this by alleging that Shaner required its tipped employees to perform work that is entirely unrelated to their tipped occupation. (ECF No. 49 at 14–15). Under FLSA, an employer may not take a tip credit for unrelated, non-tipped work that an employee performs. *Harding v. Steak N Shake, Inc.*, 745 F. Supp. 3d 571, 588–590 (N.D. Ohio 2024). For a restaurant server, such unrelated work might include:

> working the grill line and performing the primary job duties of cook; performing the primary job duties of a host or hostess; taking out trash; scrubbing walls; sweeping and mopping floors; cleaning booths; operating the dishtank and performing the primary job duties of a dishwasher; breaking down and cleaning the server line; ensuring the general cleanliness for the front of the house; detail cleaning throughout the restaurant; stocking stations throughout the restaurant; stocking ice; preparing delivery orders Uber Eats, Grub Hub and Door Dash; preparing takeout orders and online orders from Denny's.com; answering the phone; working the cash register; greeting and seating customers; preparing salads; preparing deserts, ice creams and milkshakes; cutting lemons, limes, melons and strawberries; washing and stocking unsliced fruits; baking biscuits; preparing specialty drinks such as lemonades, limeades and teas; and rolling bins full of silverware

*Id.* at 588 (citations omitted). Second, Paton contends that even if this Court found all the non-tipped work that he performed to be "directly supporting" of his server duties, Shaner still maintained a policy that violated FLSA as he spent more than 20% of his time on tip-supporting work in a given week. (ECF No. 49 at 17). *See Harding*, 745 F. Supp. 3d at 580 (citing *Rafferty v. Denny's Inc.*, 13 F.4th 1166, 1175 (11th Cir. 2021)) ("[A]n employer may claim a tip credit for time an employee spent performing duties related to the tipped occupation so long as 'those duties were not performed by that employee for more than twenty percent of her working hours.'").

Here, Paton testified that he was regularly expected to show up to work early and to stay after closing to perform many of the duties recognized in *Harding* as unrelated. (ECF No. 49-1 at 2). Some of these duties included rolling silverware, sweeping, setting up bar stations, cleaning booths, cutting fruit, filling condiments, disassembling and cleaning bar equipment, etc. (*Id*. at 2–3). He further supported his affidavit by highlighting Shaner's own policy document titled "VASO Job Duties." (See 49-2, Exhibit B). According to the document, VASO servers and server assistants who opened were expected to: Attend a pre-opening 15-minute mandatory meeting; prepare the restaurant for opening: putting chairs down, filling ice bins, setting glassware and silverware; set up cabana / igloos on the outdoor patio; brew tea; stock tea and coffee filters; and stock to-go boxes and bags. (*Id.*). The document also provided an extensive list of "running duties"

that servers and server assistants were expected to complete during their shift. Such duties included moving tables, cleaning and wiping down booths, rolling and polishing silverware, filling condiments, cleaning the kitchen areas, etc. (*Id.*). At closing, the document indicates that servers and server assistants are expected to complete similar extensive cleaning duties, to take out the trash, and to prep appliances. (*Id.* at 2).

Paton further testified that he was not paid the full minimum wage for these duties and that he observed other VASO employees completing these same duties that were unrelated to their tipped occupation. (ECF No. 49-1 at 5). Paton also witnessed barbacks and bartenders completing many of the tasks listed above. (*Id.*). He also attested that he discussed these duties and policies with his co-workers and VASO management. (*Id.*). Thus, where Paton has provided firsthand observations and official VASO policies supporting his claims, this Court finds that this is sufficient at this stage to demonstrate a strong likelihood that he is similarly situated to other VASO non-tipped employees and that they suffer from a single FLSA violating policy. *O'Neal*, 2013 WL 4013167, at *8; *see also Harding*, 745 F. Supp. 3d at 588 (finding that plaintiffs sufficiently demonstrated that they performed tasks unrelated to serving where the plaintiffs provided a policy document showing that servers were assigned "daily sidework duties.").

In opposition, Shaner does not contest the existence of the "VASO Job Duties" document, or that VASO employees were expected to abide by said document. Instead, Shaner attempts to differentiate Paton from other Vaso employees. First, Shaner contends that Paton was never a bartender, barback, or host. (ECF No. 50 at 3–5). Specifically, Shaner argues that Paton cannot be similarly situated to these other employees because he never worked as these positions and only worked as a bartender on two limited occasions. Further, Shaner notes that the duties of servers and server assistants are vastly different from bartenders, barbacks, and hostesses and thus, Paton

cannot speak to what was required of those jobs. In Shaner's view, Paton provides merely speculative evidence to support that he is similarly situated. This Court disagrees.

In *Demorris v. Rite Way Fence, Inc.*, the court ruled that the plaintiff failed to prove he was similarly situated where he failed to identify a person who could support his allegations, did not provide facts to support his personal knowledge, failed to provide job titles of those similarly situated, and did not describe how he realized others were affected by the alleged violative policy. 2015 WL 12990483, at *3–4 (E.D. Mich. Mar. 30, 2015). Paton's allegations and proffered evidence surpass that of the plaintiff in *Demorris*. While Paton may have never been "employed" as a bartender, it is undisputed that he worked at least two shifts as a bartender. Thus, it is incorrect for Shaner to assert that Paton cannot speak to the job requirements of the VASO bartenders when he has firsthand knowledge of performing that role, albeit in a limited capacity.

Additionally, Paton testified that he observed his bartender and barback co-workers performing the same unrelated duties that he did. *O'Neal*, 2013 WL 4013167, at *8 ([F]irst-hand observations or conversations with co-workers can be sufficient to meet the lenient standard for demonstrating that a similarly situated class of employees exists."). Paton also points to the VASO documents that list these unrelated duties. (ECF No. 49-1, Exhibit B). While the document specifies that the job duties listed are for servers and server assistants, the submitted job descriptions for bartenders and barbacks list that both positions are also expected to perform opening and closing side duties. (ECF Nos. 49-6, Exhibit F). This documentation coupled with Paton's own first-hand observations of his co-workers, as well as his time working bartender shifts, leads this Court to believe that it is likely that Paton was similarly situated to the bartenders and barbacks. Thus, this Court is not persuaded by Shaner's arguments that Paton's evidence is too speculative.

This Court does, however, recognize that Paton has failed to offer sufficient evidence that he is similarly situated to his VASO co-workers who were employed as hosts. Paton does not contend that he ever worked in this role, nor does he attest to observing hosts perform the same side work duties as him. Thus, this Court finds that Paton has failed to demonstrate he is similarly situated to his VASO coworkers employed as hosts.

Next, Shaner contends that the single most important factor that warrants denying Paton's motion is that the other employees worked different shifts and had different hourly rates than Paton. This Court is again not persuaded. There is no requirement that a plaintiff and other similarly situated employees be identical. Rather, the employees must be subject to the same FLSA violating policy. Even if Paton, and another plaintiff were paid at different hourly rates or had different amounts of downtime, such is not relevant where the proper inquiries at this stage are: (1) whether all similarly situated employees were being paid at a sub-minimum wage for unrelated work; (2) and whether such employees spent over 20% of their time on related but non-tipped duties. *See Hester v. Park Cmty. Credit Union, Inc.*, 818 F. Supp. 3d 888, 894 (W.D. Ky. 2026) (citations omitted) ("Courts in this circuit recognize that notice may be appropriate even 'where the employees' job duties and their titles differed substantially,' so long as the named plaintiff can show that they were "subject to the same general corporate policies."*).* And notably, Shaner points to no authority supporting the contention that in order to be similarly situated all employees must work the same shifts at the same hourly rate.

Shaner also argues that there is no evidence that Paton or other similarly situated employees performed work unrelated to their job for the entirety of their shifts. (ECF No. 50 at 14–17). Specifically, Shaner contends that Paton's claims rest on the faulty premise "that Plaintiff, and others, were doing work for each and every minute of his shift when he was not seeing customers."

(*Id.* at 14). Shaner argues that Paton and other VASO employees certainly had down periods in their shifts and cannot prove that during every instance where he was clocked in before the restaurant opened that he was performing non-tipped work. (*Id.* at 15). In the Court's view, however, this undercuts Shaner's arguments. Most damning to Shaner's defense is that the restaurant seemingly had no method of tracking the work that its tipped employees were doing. In an email addressing instances where Paton was clocked in for large amounts of time prior to taking his first table, VASO General manager, Josh Buck, wrote:

> They could have been days when he was working a private event and was setting up for the party - or just days where the first table in his section wasn't seated until that time. If that is the case, he would've most likely been helping run food or assisting his team with whatever they may need with their tables, as is the expectation on a tip pool.

(ECF No. 49-7, Exhibit G). Similarly, in another email exchange between Shaner HR Manager, Carrie Bosco and Shaner HR Manager, Aimee Guffey, Bosco wrote that all VASO front of house employees "are earning tips as if they are actively serving all of the time, even if they are not waiting on tables." (ECF No. 50-3 at 3). Bosco also noted that she "does not know how much time [Paton] spends on his side work" and that it is "hard to track that time." (*Id.*). She does note that VASO can glean how much "active" time Paton spent waiting tables based on his sales on the given days and tracking when he ran his last check/transaction in the Toast system. (*Id.*).

These emails bring to light multiple issues, none of which is favorable to Shaner. First, such communications confirm Paton's allegations that he and other employees are paid at their tipped rate even during times which they are doing unrelated work such as setting up for a party, before the restaurant is even open. Further, such communications indicate that even prior to having a table, servers like Paton were expected to help run food or assist other employees as needed. Second, the email exchange between Bosco and Guffey indicates that VASO does not have a method to track employee side work. While it is clear that VASO is able to discern the time that a

server actively has tables, it is not aware how much time the employees spend on sidework during a given shift. Finaly, the emails also reflect a fundamental misunderstanding by Shaner management level employees regarding what is required under the FLSA. Bosco seemingly asserts that the VASO tip pool is beneficial to VASO employees as they are receiving tips regardless of whether they have tables during all hours of the shift. This assertion demonstrates an unawareness of the fact that if an employee during this time is engaged in unrelated side work, at a tipped wage, a FLSA violation is being committed. And notably, Shaner cannot simply avoid liability for its failure to have a system in place to track such work.

Given that at this stage, Paton only needs to prove that he is similarly situated to other employees by demonstrating that they suffer from a single, FLSA-violating policy, and this Court has already determined such, this Court need not address Shaner's additional arguments as they are premature at this stage.[1] *Hogan v. Cleveland Ave Rest., Inc.*, 690 F. Supp. 3d 759, 776 (S.D. Ohio 2023) (citations omitted) ("Importantly, 'at the conditional certification stage, the Court does not consider the merits of the claims, resolve factual disputes, or decide substantive issues.'"); *O'Brien*, 575 F.3d at 585 ("[T]he plaintiffs were similarly situated, because their claims were unified by common theories of defendants' statutory violations, even if the proofs of these theories are inevitably individualized and distinct.").Thus, this Court finds that the Paton has adequately demonstrated a "strong likelihood" that he is similarly situated to the other potential plaintiffs who worked at VASO as servers, server assistants, bartenders, and barbacks, but not those who worked as hosts or hostesses.

---

[1] For example, this Court is not persuaded by Shaner's individualized defenses arguments. Paton has demonstrated that all VASO tipped employees receive their tipped wage for the duration of the time they are clocked in and the restaurant does not have a system for tracking side work. Thus, regardless of how much time each specific plaintiff spent not appropriately compensated for this work does not impact Shaner's liability for maintaining a FLSA violating policy. *Walters v. Abbott Lab'ys*, 2026 WL 522856, at *4 (S.D. Ohio Feb. 24, 2026) ("Any question as to how much time each specific plaintiff went uncompensated goes toward damages, not liability. Collective litigation is not barred based solely on a damages question which can be addressed separately from liability.").

**B. Proposed Notice**

Paton has submitted a proposed notice and consent form to this Court for approval to send to all current and former tipped employees of Defendant who worked at VASO at any time since April 1, 2021. (ECF Nos. 49-9; 49-10; 49-11). Shaner submits three objections to Paton's proposed notice: (1) Paton has failed to provide support for a 90-day notice period; (2) Paton has failed to demonstrate that a three-year limitations period is warranted; and (3) the proposed notice should not include language stating that "Please note that you are not directly responsible for any attorneys' fees or costs." (ECF No. 50 at 17–20). The Court addresses each objection below in turn.

First, this Court addresses Shaner's objection to a 90-day notice period. Specifically, Shaner contends that without some demonstration by Paton that there exists a hardship in locating potential class members, a notice period of 45 or 60 days shall suffice. (*Id.* at 17). In opposition, Paton contends that a 90-day notice period is standard, especially in the context of restaurant workers who tend to be transient. This Court agrees with Paton. Here, due to the nature of the restaurant industry, and turnover of low-wage positions, many potential plaintiffs may no longer be employed by VASO. Also, while Shaner objects to the 90-day notice by pointing to other cases in which that time period has been deemed excessive, Shaner does not specify why 90 days is excessive in this particular case. *Pender v. Wings*, 661 F. Supp. 3d 751, 763 (S.D. Ohio 2023) (refusing to find a 90-day notice period excessive where the defendant failed to make a particularized objection). Additionally, a 90-day notice period is not uncommon in FLSA claims. *Conklin v. 1-800 Flowers.com, Inc.*, 2017 WL 3437564, at *6 (S.D. Ohio Aug. 10, 2017) ("But 90-day notice periods are also common in FLSA lawsuits, and the difficulty that Plaintiffs' counsel may have in locating former employees of Defendant, even of a single location, weighs in favor

of a longer notice period."). Accordingly, this Court approves Plaintiff's request for a 90-day notice period.

Second, this Court addresses Shaner's objection to a three-year limitations period. (ECF No. 50 at 18). In Shaner's view, Paton has failed to demonstrate that Shaner committed a "willful violation" of the FLSA so as to allow extension of the limitations period from two to three years. (ECF No. 50 at 18). Notably, however, various courts in the Sixth Circuit have refrained from deciding willfulness at the notice stage. *See Cordell v. Sugar Creek Packing Co.*, 691 F. Supp. 3d 838, 848 (S.D. Ohio 2023) (reasoning that willfulness is better suited for determination after discovery has occurred); s*ee also Hogan*, 690 F. Supp. 3d at 782 (noting that later in the litigation plaintiffs may be able to prove willfulness). In *Reeb v. Alro Steel Corp.*, for example, the court reasoned that "opt-in notice at this early stage of the litigation is to be construed broadly to further the remedial purposes of the FLSA.… [a]nd it would be prudent to cast a wider net with respect to potential plaintiffs at the early stage, and then limit the class—if appropriate—in the second phase of the collective action process." 2022 WL 1125795, at *7 (E.D. Mich. Apr. 15, 2022). This Court agrees. Thus, the opt-in form should state the earliest possible date equitable tolling would be considered, which would be three years from the filing date of the motion for court-facilitated notice. *Polen v. JSW Steel USA Ohio, Inc.*, 699 F. Supp. 3d 622, 634 (S.D. Ohio 2023) (quoting *Hogan*, 690 F. Supp. 3d at 782). Paton filed his Motion for Court Facilitated Notice on September 4, 2025 (ECF No. 49), so the notice form must indicate that the opt-in notice period began, at the earliest, three years prior, on September 4, 2022.

Finally, Shaner objects to the inclusion of the following sentence in Plaintiffs' proposed notice: "Please note that you are not directly responsible for any attorneys' fees or costs." (ECF no. 50 at 20). Specifically, Shaner argues that in facilitating notice, courts should avoid inclusion

of any language that might encourage plaintiffs to join the suit. (*Id.*). Shaner fails to point to any authority, however, that classifies this type of language as encouragement or language that crosses the line. Accordingly, this Court overrules Shaner's objection.

**C. Equitable Tolling**

Finally, Paton requests that this Court order equitable tolling to protect the rights of all opt-in plaintiffs given that this case was subject to significant delays through no fault of the Plaintiff. (ECF No. 49 at 18). Equitable tolling is typically appropriate where necessary to "prevent resulting injustice to plaintiffs from protection of defendants." *Clark*, 68 F.4th at 1013 (Bush, J., concurring) (citing *Am. Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 546–48, (1974)). Post-*Clark*, courts in this district have held that where delay occurs either due to the FLSA notification process implemented by *Clark* or where motions for court-facilitated notice have been pending for a long time, equitable tolling is warranted. *Terry v. Paycor, Inc.,* 2026 WL 775515, at *3 (S.D. Ohio Mar. 19, 2026) (granting equitable tolling based on the delay caused by the *Clark* inquiry and the time it took for the court to resolve the motion for authorized notice); *Sekala v. Just Mike's Jerky Co., Inc.*, 2025 WL 1564272, at *4 (N.D. Ohio June 3, 2025) ("Considering the heightened standard to be applied after *Clark* in determining similarity which includes the litigation of defenses, the Court finds that the application of equitable tolling is appropriate here. Because delay alone warrants equitable tolling, the Court need not analyze the equitable tolling factors."); *Montenegro v. Vaco LLC*, 2026 WL 1182033, at *18 (M.D. Tenn. Apr. 30, 2026) (collecting cases reasoning that equitable tolling is warranted where motions for court-authorized notice have been pending for some time). Here, Paton's Motion has been pending for over a year. Accordingly, this Court finds that equitable tolling is appropriate.

## IV. CONCLUSION

For the reasons stated more fully above, Paton's Motion for Court Authorized Notice (ECF No. 49) is **GRANTED** insofar as he seeks a determination that he has shown a strong likelihood that he and the potential opt-in plaintiffs are similarly situated. The motion is **DENIED** without prejudice to the extent it seeks approval of the proposed notice and opt-in form. This Court **ORDERS** the following:

(1) Within **fourteen (14) days** of entry of this Order, the parties shall meet and confer in good faith for the purpose of negotiating the language of the notice that is to be issued to the proposed collective and the procedure for issuing the notice.

(2) Within **fourteen (14) days** of entry of this Order, the parties are **DIRECTED** jointly to submit a revised proposed notice and opt-in form r**eflecting the Court's findings outlined above.** The Court will facilitate notice upon submission of the corrected documents.

**IT IS SO ORDERED.**

**ALGENON L. MARBLEY**
**UNITED STATES DISTRICT JUDGE**

**DATED: September 23, 2026**